FILED IN CHAMBERS
U.S.D.C. Rome

MAR 26 2007

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

NANCY L. LOVETT AND ROGER
LOVETT AND ROBERT L. RINGER,
INDIVIDUALLY AND AS
ADMINISTRATOR OF THE ESTATE OF
MARY ESTHER RINGER, DECEASED,

    Plaintiffs,

v.

KLLM, INC. AND RONNIE L.
SEALS,

    Defendants.

CIVIL ACTION

NO. 4:05-CV-026-RLV

O R D E R

This is a wrongful death and personal injury action arising out of a motor vehicle accident that occurred on February 5, 2003. In that accident, while traveling north on I-75 in Bartow County, Georgia, the vehicle driven by the plaintiff Nancy Lovett collided with a tractor-trailer driven by the defendant Ronnie Seals. As a result, the plaintiffs' vehicle veered off the highway and overturned, injuring the occupants, one of whom, Mary Ringer, eventually died.

A jury trial was held from January 29 through February 3, 2007. The jury returned a verdict in favor of the defendants. Currently pending before the court is the plaintiffs' Motion for a New Trial [Doc. No. 106] and an objection to the Defendants' Bill of Costs [Doc. No. 113]. The plaintiffs assert that a new trial is warranted pursuant to Rule 49 and 59 for two reasons: (1) the court improperly admitted testimony from the defendants' expert witness, Dr. Craig Depken, and (2) the jury rendered an inconsistent verdict.

Dr. Depken's Testimony

There are two parts of Dr. Depken's testimony that the plaintiffs object to. The first part is Dr. Depken's statements concerning a service bulletin for the plaintffs' 1999 Chevrolet Suburban. The service bulletin gave notice about a defect that caused severe vibrations and lack of ability to properly steer and maintain control. The plaintiffs assert that the court erred in allowing Dr. Depken to testify about the service bulletin because his expert report did not contain any reference to a service bulletin and because he never disclosed before trial that he had developed an opinion based on the service bulletin.

Rule 26 requires that an expert disclose his opinions and the basis for those opinions in a written report, and it requires an expert to supplement that disclosure if there are any changes or additions to the information in that report. FED. R. CIV. P. 26(a)(2), (e). The plaintiffs assert that Dr. Depken improperly opined that the plaintiffs' vehicle caused the accident due to a steering defect as described in the service bulletin because his expert report did not disclose that opinion or the basis for it.

Notably, Dr. Depken's expert report did disclose his opinion that the plaintiffs' vehicle was "in an out-of-control condition before striking the tires of the KLLM trailer." [Pls.' Mot. for New Trial, Ex. 1, Doc. No. 106, 18.] At trial, Dr. Depken opined that the plaintiffs' vehicle "experienced a steering problem, and that steering problem caused or allowed the Suburban to . . . come

into contact with the left side of the trailer." [Trial Tr. Depken Test. 12:16-23, Doc. No. 107.] Explaining how he had come to that conclusion, Dr. Depken testified that he found tire marks from the tractor-trailer on the Suburban at point of impact but that those marks were at a location on the Suburban indicating that it was raised up when the marks were made. Then, when he was asked what caused the Suburban to raise up, this court sustained the plaintiffs' objection at that point, ruling that Dr. Depken had no basis for giving an opinion as to how the Suburban could have been raised up when it contacted the defendants' truck. However, when asked later if he had conducted any research to determine whether there were any service bulletins or recalls on the plaintiffs' Suburban, Dr. Depken testified that there existed one service bulletin describing an issue with the vehicle's steering that caused uncontrollable vibration and lack of ability to steer. [Depken Test. 30:25-31:12.]

The plaintiffs argue that Dr. Depken's testimony about the steering defect blindsided them and that his opinion regarding the cause of the crash violated Rule 26 because he had not disclosed that his opinion was based on that service bulletin. However, a fair reading of his testimony indicates that his opinion was not based on the service bulletin. Instead, his opinion as to the cause of the accident was based on the physical evidence gathered at the scene by the highway patrol as well as his personal inspection of the accident site and the vehicles, not the service

3

bulletin. At trial, Dr. Depken opined that the plaintiffs' vehicle lost control and veered into the lane in which the defendant, Ronnie Seals, was driving his tractor-trailer. His expert report, which the plaintiffs relied on in discovery, clearly disclosed that opinion, and Dr. Depken's testimony does not stray from the fundamental opinion disclosed in his report. In other words, Dr. Depken rendered an expert opinion about the cause of the accident, i.e., that the plaintiffs' vehicle was out-of-control. He did not render an opinion as to how the plaintiffs' vehicle got out-of-control.

To the extent that Dr. Depken testified about the service bulletin, it is only in the context of answering questions about how the plaintiffs' vehicle might have lost control. When responding to such questions by both parties, Dr. Depken indicated that he could not determine whether in fact the plaintiffs' vehicle had suffered the kind of defect the service bulletin warned against, just that the conditions described in the bulletin were consistent with the physical evidence at the scene. When his testimony about the service bulletin arose, Dr. Depken was careful to make the distinction that while he thought the steering defect theory was a plausible explanation for the loss of control, he could not render an opinion in that regard. However, Dr. Depken could determine, based on the physical evidence gathered at the scene and after inspecting the vehicles, that for some unknown reason the plaintiffs' vehicle was out-of-control and veering from

side-to-side when it impacted the defendants' trailer. That evidence, in his opinion, showed that it was the plaintiffs who caused the accident and not the defendants. Therefore, this court concludes that because Dr. Depken developed an opinion as to the cause of the accident, not the cause of the plaintiffs' vehicle losing control, and did in fact properly disclose that opinion, he was not required to disclose any knowledge of the service bulletin.

The second part of Dr. Depken's testimony that the plaintiffs object to is his testimony about the first set of tire marks that the Georgia State Patrol accident inspector, Corporal Prather, said were related to the plaintiffs' vehicle. Dr. Depken testified those particular tire marks were not related to the accident, thus directly contradicting Corporal Prather. The plaintiffs assert that Dr. Depken improperly rendered an opinion that those marks were unrelated to the accident because he did not include that opinion in his report. The defendants counter that no error was committed because an expert's report is required only to report on what is included in the basis for his opinion, not what is excluded.

Essentially, the plaintiffs argue that Dr. Depken's report should have included his opinion that the first set of tire marks were unrelated because Corporal Prather's report indicated his opinion that they were related. This argument implies that Rule 26 requires a defendant's expert report to specifically indicate every point of contention with the plaintiff's expert report. However,

5

the plain language of Rule 26 is not so stringent. There is no requirement to specifically mention in a report the areas of disagreement with other expert reports. Instead, Rule 26 merely requires a report to include a "statement of all opinions to be expressed and the basis and reasons therefor." Fed. R. Civ. P. 26(a)(2)(B).

The court does not view Dr. Depken's opinion that the first set of marks are unrelated to the accident as a "new" opinion, and, therefore, sanctions under Rule 59 are not applicable. Dr. Depken did disclose the fact that he relied on the state patrol's report, which included the data of the fist set of marks, and he formed an opinion based on his analysis of that data. Consequently, Dr. Depken's report complied with the disclosure requirements. Simply because he construed that data differently from the plaintiffs' expert does not impose an additional burden of specifically disclosing every point of disagreement. Two experts can look at the same data and come up with two different conclusions. As long their respective opinions and the basis for those opinions are disclosed, that is sufficient.

Moreover, because the plaintiffs' expert testified that the first set of marks were related [Trial Tr. Brown Test. 11:23-12:14, 14:13-23, 24:15-20, Doc. No. 108], they put that precise issue before the jury. It would have been unfair to allow the plaintiffs to put forth evidence about the relatedness of the first set of tire marks, but then deny the defendants an opportunity to do the

same. See Bearint ex rel. Bearint v. Dorel Juvenile Group, 389 F.3d 1339, 1349 (11th Cir. 2004).

In any event, this court does not view Dr. Depken's testimony about the service bulletin or the first set of tire marks as new or undisclosed information. Therefore, a new trial is not warranted.

### The Jury's Verdict

The plaintiffs also assert that a new trial is necessary because the jury's verdict was inconsistent. At the conclusion of the trial, the jury received a general verdict form and a special interrogatory.[1] Although the jury returned a general verdict for the defendants, it did not complete the special interrogatory. At issue, therefore, is whether the failure to complete the special interrogatory in this case is inconsistent with the general verdict for the defendants. If so, a new trial is warranted under Rule 49.

The special interrogatory asked the jury three questions and it included a blank space for each answer:

> Special Interrogatories to the Jury
>
> Do you find from a preponderance of the evidence:
>
> 1. That the Defendants were negligent in the manner claimed by the Plaintiffs and that such negligence was a legal cause of damage to the plaintiffs?
>    Answer Yes or No _____
>    [Note:  If you answered No to Question No. 1 you need not answer the remaining questions.]

---

[1] Because the court reaches the merits of the plaintiffs' argument, it need not address the classification of the verdict as special or general and the subsequent issue of timeliness with respect to the plaintiffs' objections.

2.  That the Plaintiff Nancy Lovett was also negligent in the manner claimed by the Defendants and that such negligence was a legal cause of the Plaintiffs' damages?
    Answer Yes or No _____

3.  If you answered "yes" to Question Two, what proportion or percentage of the Plaintiffs' damages do you find from a preponderance of the evidence to have been legally caused by the negligence of the respective parties?
    Answer in Terms of Percentages
        The Defendants                    _____%
        The Plaintiff Nancy Lovett        _____%
    (Note:  The total of the percentages given in your answer should equal 100%.)

[Special Interrogs. to the Jury, Doc. No. 103, 2-3.]

On a separate general verdict form, the jury found for the defendants. [Jury Verdict Form, Doc. No. 103, 1.] However, the jury did not complete the special interrogatories and returned that form blank. The issue thus becomes whether the failure to answer question one is inconsistent with the jury's verdict in favor of the defendants.

The plaintiffs argue that the jury's verdict was inconsistent because "the special interrogatories indicated that fault was to be apportioned either to the Plaintiff, Defendant, or a combination of the two, [and] the jury's failure to allocate fault to either party is inconsistent with the jury's general determination that the Defendant was not liable for the accident." [Pls.' Mot. for New Trial, 11.] In other words, the plaintiffs assert that the verdict is fatally inconsistent because "the jury found in favor of the [d]efendant, but did not allocate any fault to the [p]laintiff when

8

asked to allocate 100% of fault as between the parties." [Id. at 12.]

However, the jury was not required to allocate fault to either party in all cases. According to the plaintiffs' argument, a finding in favor of the defendants necessarily meant that the jury had to find the plaintiff 100% at fault. Yet, that was not the law as applied to this case. The jury was charged on comparative negligence. Accordingly, the defendants could be liable for damages only if the jury found them to be more than 50% at fault. Because the jury found in favor of the defendants, that necessarily meant that the jury found the defendant less than 50% at fault, which obviated the need to allocate fault among the parties. See O.C.G.A. § 15-12-33(a).

When presented with an alleged inconsistency, a court looks at the entire record to determine whether an inconsistency exists and "the court shall make all reasonable efforts to reconcile [the inconsistency.]" Wilbur v. Correctional Servs. Corp., 393 F.3d 1192, 1200 (11th Cir. 2004)(internal quotations omitted). In this case, the jury could have found in favor of the defendants based on the testimony by the witnesses and the experts. Therefore, this court concludes that the jury's failure to answer the special interrogatory was not inconsistent with their general verdict in favor of the defendants. Consequently, a new trial is not warranted.

Objection to Bill of Costs

As the prevailing party, the defendants submitted a bill of costs [Doc. No. 110] in the amount of $16,315.55. The plaintiffs object to the costs taxed with respect to travel expenses, court reporter charges, costs of obtaining medical records, witness fees, and fees for service and summons.

Rule 54(d) of the Federal Rules of Civil Procedure allows for the awarding of costs to the prevailing party. The costs that may be taxed against the non-prevailing party are defined in 28 U.S.C. § 1920:

> (1) Fees of the clerk and marshal;
> (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

The defendants' bill of costs includes $7,460.74 in travel expenses and $307.26 in mileage. Although travel expenses are not one of the defined categories of taxable costs pursuant to § 1920, the defendants nevertheless assert that travel related expenses are recoverable. In support, they cite <u>Cullens v. Georgia Dep't of Transp.</u>, 29 F.3d 1489, 1494 (11th Cir. 1994), but any reliance on that case is misplaced. In <u>Cullens</u>, the Eleventh Circuit stated, "[t]ravel expenses are appropriate expenses under § 1920 to the

10

extent they are reasonable."  29 F.3d at 1494.  However, in so doing the court cited to its holding in <u>Dowdell v. City of Apopka</u>, 698 F.2d 1181, 1192 (11th Cir. 1983), "all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under *section 1988*" (emphasis added).  Notably, 42 U.S.C. § 1988 provides for the awarding of attorney's fees in civil rights cases.  Thus, the standard promulgated by the Eleventh Circuit in <u>Dowdell</u> with respect to including travel expenses as part of taxing costs to the non-prevailing party is for assessing attorney's fees in civil rights cases, not personal injury cases.  The parties in <u>Dowdell</u> and in <u>Cullens</u> had filed motions for attorney's fees under §§ 1988 and 2000e-5(k), not a bill of costs under 28 U.S.C. § 1920, which the defendants have filed in this case.  Consequently, the rule proffered by defendants, while applicable in a civil rights context, is inapposite here.[2]

The power to tax costs pursuant to Rule 54(d) "is solely a power to decline to tax, as costs, the items enumerated in § 1920." <u>Crawford Fitting Co. v. J.T. Gibbons, Inc.</u>, 482 U.S. 437, 445 (1987).  Taxation of costs is limited to the narrow definitions of § 1920, which embodies the full extent of a federal court's power

---

[2] To the extent that the Eleventh Circuit's statement in <u>Cullens</u> would require taxing reasonable travel expenses pursuant to § 1920, that language appears to mistakenly reference § 1920 instead of § 1988.  In any event, that language is merely dicta and, therefore, not binding on this court.

to shift the costs of litigation to the non-prevailing party. Id. Consequently, this court may not tax any cost unless it falls within one of the categories enumerated by the statute. And because § 1920 does not provide for the recovery of any travel or mileage expenses, the defendants may not recover those costs.

The bill of costs also includes court reporter expenses relating to the depositions of KLLM representatives Sam Strawder, Ricky Parker, and Gail Smith, as well as the depositions of Ronnie Seals, Dr. Manof Desai, and Roger Lee Lovett, Jr. The basis for the plaintiffs' objection to the court reporter expenses is that these particular depositions were used only for discovery and not at trial.

However, the plaintiffs' objections in this regard are without merit. Section 1920 expressly provides for the recovery of court reporter costs "necessarily obtained for use the case." 28 U.S.C. § 1920(2). Simply because the depositions were not used at trial does not render them unnecessary. Obtaining deposition transcripts for use during discovery may be taxable as long as it is necessary to the issues in the case when the deposition was taken. EEOC v. W&O, Inc., 213 F.3d 600, 620-22 (11th Cir. 2000). Here, the defendants have shown that each of the depositions objected to by the plaintiffs was necessary for either purposes of discovery or preparation of possible examination during the trial. The plaintiffs have made no showing that the depositions were unrelated, just that they were not used at trial. However, that is

not the measure used to tax costs pursuant to § 1920. Therefore, the taxation of the court reporter charges is proper.

With respect to the charges for medical records, the plaintiffs assert that the defendants needlessly incurred these costs and, consequently, should not be allowed to recover their expenses. The basis for the plaintiffs' assertion is that they themselves provided all the relevant medical records to the defendants; thus any expense incurred as a result of the defendants independently requesting a copy of the plaintiffs' medical records was unnecessary.

Section 1920(4) provides for the recovery of costs associated with obtaining records so long as they are necessary for use in the case. The standard for determining whether obtaining copies of medical records is a necessary cost is similar to the standard for recovery of deposition costs: "whether the prevailing party could have reasonably believed that it was necessary to copy the papers at issue." EEOC v. W&O, Inc., 213 F.3d at 623.

The defendants have shown that obtaining the medical records at issue was necessary for either discovery, use at trial, or evaluating damages claims. The records of Mary Ringer were necessary because the defendants had to examine her medical history to put forth evidence on the full value of the life for purposes of determining damages. Although the $575 fee incurred in obtaining Mrs. Ringer's records from the Cartersville Medical Center may seem unreasonable to the plaintiffs, it is what the defendants were

charged and so that is the cost to be taxed. Similarly, the records for Nancy Lovett and Robert Ringer were necessary because both claimed personal injury damages. Therefore, this court concludes that it was necessary to copy the medical records at issue and those costs are properly taxed to the plaintiffs.

The plaintiffs also object to the witness fees assessed by the defendants for Paul Byers' deposition. They assert that because Mr. Byers did not testify as a live witness at trial the defendants are not entitled to recover witness fees. However, 28 U.S.C. § 1821(a)(1) clearly provides for the allowance of witness fees where a witness provides testimony by deposition as well as at court. Accordingly, the plaintiffs' objections in this regard are without merit.

Lastly, the plaintiffs object to the taxation of $390 for fees associated with the service of summons and subpoena. Although § 1920(1) provides for the recovery only of fees of the clerk and marshal, the Eleventh Circuit has held that private service may be also taxed pursuant to § 1920(1). Accordingly, the defendants would be entitled to recover their costs associated with service. The defendants have not, however, provided any accounting of their expenses in this regard. Therefore, this court has no way of determining the appropriate amount to tax the plaintiffs and the award of service fees is not appropriate.

CONCLUSION

For the foregoing reasons, the plaintiffs' Motion for a New Trial [Doc. No. 106] is DENIED. The plaintiffs' objections to the

Bill of Costs [Doc. No. 113] is GRANTED in part and DENIED in part. The clerk is directed not to tax the costs for the defendants' travel and mileage ($7,768.00) or the costs for service ($390).

SO ORDERED, this 26th day of March, 2007.

_____
ROBERT L. VINING, JR.
Senior United States District Judge